**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| INNOVATION SCIENCES, LLC | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| v. | § | |
| | § | |
| | § | NO. 4:18-cv-00476 ALM |
| HTC CORPORATION, | § | |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |
| | § | |

**MOTION OF DEFENDANT HTC CORPORATION TO TRANSFER VENUE TO THE**
**<u>EASTERN DISTRICT OF VIRGINIA</u>**

## <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ......................................................................................................... 1

II.   STATEMENT OF FACTS ........................................................................................... 4

    A.    VIS has no meaningful connection to this district ................................................ 4

    B.    VIS has already sued HTC in E.D. Va. on related patents and technology
          and Judge O'Grady is best positioned to consider VIS's latest claims.................. 5

    C.    HTC has no presence in the Eastern District of Texas ......................................... 8

III.  ARGUMENT ................................................................................................................ 8

    A.    Plaintiff could have filed this case in the Eastern District of Virginia ................. 9

    B.    Plaintiff's post-Complaint activities that create connections to Texas are
          irrelevant and consideration would be contrary to Federal Circuit
          precedent .............................................................................................................. 9

    C.    This case belongs in the Eastern District of Virginia ......................................... 11

          1.    The private interest factors favor transfer ................................................ 11

                a.    Plaintiff was a Virginia corporation, residing in Virginia at
                    the time the Complaint was filed and still maintains a
                    residence and business in Virginia ............................................... 12

                b.    Compulsory process will secure key trial testimony in E.D.
                    Va. .................................................................................................. 12

                c.    E.D. Va. is a more convenient forum for witnesses.................... 13

                d.    Practical Considerations: judicial economy would be
                    preserved if the Alexandria Court in E.D. Va. hears this
                    case ................................................................................................ 13

          2.    The public interest factors favor transfer ................................................ 14

                  a.    Transfer would create no administrative difficulties in E.D.
                    Va. .................................................................................................. 14

                b.    E.D. Va. has a far greater interest in adjudicating this case
                    than this District ............................................................................ 14

                  c.    The remaining factors are neutral ............................................... 15

IV.   CONCLUSION ............................................................................................................ 15

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adaptix, Inc. v. HTC Corp.*,
  937 F. Supp. 2d 867 (E.D. Tex. 2013) ...........................................................................10, 11

*Auto. Body Parts Ass'n v. Ford Glob. Techs., LLC*,
  No. 4:13-cv-705, 2015 WL 123852 (E.D. Tex. Jan. 7, 2015) .............................................8, 9

*In re Eli Lilly and Co.*,
  541 F. App'x 993 (Fed. Cir. 2013) .........................................................................................13

*In re EMC Corp.*,
  501 F. App'x 973 (Fed. Cir. 2013) ...................................................................3, 10, 12, 13

*Hoffman v. Blaski*,
  363 U.S. 335 (1960).................................................................................................................3

*In re Hoffman-La Roche Inc.*,
  587 F.3d 1333 (Fed. Cir. 2009)........................................................................................3, 10

*Invitrogen Corp. v. Gen. Elec. Co.*,
  No. 6:08-CV-112, 2009 WL 331891 (E.D. Tex. Feb. 9, 2009).............................................13

*Kinetic Concepts, Inc. v. Medela AG*,
  No. 2:07-CV-187, 2008 WL 112120 (E.D. Tex. Jan. 9, 2008)..............................................13

*Lifestyle Sols., Inc. v. Abbyson Living LLC*,
  No. 2:16-cv-01290-JRG-RSP, 2017 WL 5257006 (E.D. Tex. Nov. 10, 2017).............9, 13, 14

*In re Microsoft Corp.*,
  630 F.3d 1361 (Fed. Cir. 2011)........................................................................................3, 11

*In re Nintendo Co.*,
  589 F.3d 1194 (Fed. Cir. 2009)...............................................................................................9

*Regents of the Univ. of Cal. v. Eli Lilly & Co.*,
  119 F.3d 1559 (Fed. Cir. 1997)...............................................................................................9

*Seven Networks, LLC v. Google LLC*,
  No. 2:17- V00441-JRG, 2018 WL 4026760 (E.D. Tex. Aug. 15, 2018)..................................9

*Smith v. Real Page, Inc.*,
  No. 4:18-cv-00025-ALM, 2018 WL 3105758 (E.D. Tex. June 25, 2018)
  (Mazzant, J.)...........................................................................................................................14

ii

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
    137 S. Ct. 1514 (2017) ...........................................................................................................6, 9

*U.S. Ethernet Innovations, LLC v. Acer, Inc.*,
    No. 6:09-cv-448- JDL, 2010 WL 2771842 (E.D. Tex. July 13, 2010)....................................15

*Va. Innovation Scis., Inc. v. Amazon.com, Inc.*,
    227 F. Supp. 3d 582 (E.D. Va. 2017) ...............................................................................5, 7

*Va. Innovation Scis. Inc. v. Samsung Elecs. Co.*,
    928 F. Supp. 2d 863 (E.D. Va. 2013) ........................................................................4, 5, 14

*Van Dusen v. Barrack*,
    376 U.S. 612 (1964)..............................................................................................................10

*Virginia Innovation Sciences, Inc. v. Amazon, Inc.*,
    Case No. 4:18-cv-00474-ALM, Dkt. No. 9 .......................................................................4, 8

*In re Vistaprint*
    628 F.3d 1342, 1346 (Fed. Cir. 2010).................................................................................13

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) ..............................................................................................14

*In re Zimmer Holdings, Inc.*,
    609 F.3d 1378 (Fed. Cir. 2010)........................................................................................3, 11

**Statutes**

28 U.S.C. § 1404(a) ....................................................................................................................8, 10

28 U.S.C. § 1400(b) .........................................................................................................................8

35 U.S.C. § 101................................................................................................................................2, 5, 6

Pursuant to 28 U.S.C. § 1404(a), Defendant HTC Corporation ("HTC") respectfully moves to transfer to the District Court for the Eastern District of Virginia ("E.D. Va."), Alexandria Division (the "Alexandria Court"), and with a specific request for assignment to Judge Liam O'Grady.  Judge O'Grady has recently presided over cases brought by the original Plaintiff, Virginia Innovation Sciences, Inc. ("VIS"), alleging infringement against HTC and others on patents relating to those asserted in this case and overlapping accused technology.

## I.   **<u>INTRODUCTION</u>**

The critical issues relating to transfer have already been extensively briefed to this Court. On July 5, 2018, VIS filed the instant case and three others against Amazon, Inc. ("Amazon") (4:18-cv-000474-ALM), Honeywell International, Inc. ("Honeywell") (4:18-cv-00475-ALM), and Vector Security, Inc. ("Vector") (4:18-cv-00477-ALM).  All three cases involve overlapping patents with this case and have pending motions to transfer to E.D. Va. that are fully briefed.[1] HTC respectfully submits that the arguments herein are largely duplicative of those motions and that the present motion can and should be considered collectively with the others.   The arguments and analysis supporting transfer among the parties rise and fall together.

At the time that each of those motions was filed, the analysis was straightforward—VIS was a Virginia corporation located five miles from the Alexandria Court, with significant litigation history in E.D. Va. against HTC, Amazon, and others, and no known connections to this District.   Judge O'Grady presided over multiple cases involving patents related to the patents-in-suit, gaining substantial familiarity with VIS's patent portfolio and the technology at issue here.

---

[1] The circumstances for which HTC moves to transfer now (and after defendants in related actions filed their respective motions), including whether HTC was properly served under the laws of Taiwan and discussions among counsel about dismissing HTC or waiting to see whether the Court would address transfer in the Vector case during a previously set Rule 16 conference for early December (since moved to Jan. 3), is explained in more detail in the Ou Declaration.

After several adverse rulings from Judge O'Grady, including a finding of invalidity under 35 U.S.C. § 101 on eight related patents in the cases against HTC and Amazon (affirmed by the Federal Circuit) and summary judgment in favor of Amazon on two other related patents (now on appeal), and with anticipated and pending motions for attorneys' fees, VIS switched venues by filing another round of lawsuits in the Eastern District of Texas ("E.D. Tex.").

HTC expects Plaintiff to argue that the asserted patents are "dramatically different than those at issue" before Judge O'Grady.  No defendant alleges that the patent claims here are identical to those before Judge O'Grady—that is not the proper inquiry and would violate basic tenets of patent law.  However, VIS cannot escape the strong similarities (supported by its own characterizations and allegations) between the asserted claims here and those previously considered by Judge O'Grady.  For example, patent-in-suit U.S. Patent No. 9,729,918 ("the '918 Patent") was previously asserted by VIS in a second lawsuit in E.D. Va. in which VIS characterized its infringement allegations using *identical language* to how it characterized infringement of the eight patents found invalid under § 101 in the first action.  As explained *infra* Section II.B., Judge O'Grady's invalidity analysis under § 101 is highly relevant to HTC's anticipated invalidity arguments in this case, as the identified claims in the Complaint are directed to the same abstract idea.  Plaintiff may argue inventive concept from differences under Step 2 of *Alice*, but the overlap in at least Judge O'Grady's Step 1 analysis cannot be ignored.

As this Court is aware, there has also been significant post-Complaint activity by Plaintiff that impacts the transfer analysis.  Specifically, before VIS responded to any motions to transfer (with a deadline in other cases already extended by six weeks due to VIS's changing of counsel), VIS informed HTC on November 28 that VIS had merged into newly-formed Texas corporation Innovation Sciences, LLC ("Innovation").  Innovation then filed a Motion to Substitute Party

(Dkt. No. 15) ("Substitution Motion") on December 6 that was granted the next day (Dkt. No. 18).  Plaintiff's subsequent transfer responses anchored its opposition in this new Texas corporation and the purported relocation of Innovation's "Manager," Anne Wong.  Ms. Wong, a/k/a Tiehong Wang, was also the President and CEO of VIS and is a named inventor on the patents-in-suit and the ten patents previously litigated before Judge O'Grady.

Prior to (1) the merger of VIS into newly-formed Innovation and (2) the "relocation" of Ms. Wong to Plano—both of which appear to have happened approximately four months after the filing of the Complaints and a month after the Amazon's first motion to transfer —VIS could not reasonably contend that E.D. Tex. was a more convenient forum than E.D. Va. for these cases.  There simply were no connections to this District and substantial connections to E.D. Va.

The critical question is whether Plaintiff should be allowed to manipulate the venue analysis **four months after** filing the Complaint.  The Federal Circuit has provided guidance that—irrespective of Ms. Wong's motives (*i.e.,* Innovation has claimed that she relocated for tax reasons)—the recent formation and relocation should not be considered.  First, the Federal Circuit has consistently held that "[m]otions to transfer venue are to be decided based on 'the situation which existed when suit was instituted."  *In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013) (quoting *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960)).  At the time of the Complaint, VIS owned the patents and existed as a Virginia corporation, and Ms. Wong was still living in Virginia.  Moreover, the Federal Circuit has consistently rejected arguments that recent incorporation in a district or relocation in anticipation of litigation creates persuasive convenience of venue.  *In re Microsoft Corp.,* 630 F.3d 1361, 1364-65 (Fed. Cir. 2011); *see also In re Zimmer Holdings, Inc.*, 609 F.3d 1378 (Fed. Cir. 2010); *In re Hoffman-La Roche Inc.*, 587

3

F.3d 1333 (Fed. Cir. 2009).   There is no question that the circumstances underlying Plaintiff's arguments are recent and ephemeral activities.

Respectfully, the Federal Circuit's guidance and previous venue analyses show that E.D. Va. is the more convenient forum for all of the current cases and that transfer should be granted.

## II.   **STATEMENT OF FACTS**

### A.   **VIS has no meaningful connection to this district**

Prior to its merger into Innovation, VIS was a Virginia corporation and its principal place of business had been in Alexandria since 2005.   (Dkt. No. 1 ¶ 2).   Ms. Wong was VIS's CEO, president, treasurer, sole owner, and registered agent, operating the company from her home. *Va. Innovation Scis. Inc. v. Samsung Elecs. Co.*, 928 F. Supp. 2d 863, 869-70 (E.D. Va. 2013).[2]

According to the Substitution Motion, on November 2, 2018, Plaintiff created Innovation (based in Plano).   VIS merged with Innovation six days later.   The merger document is executed by Tiehong Wang for VIS and Ann Wong for Innovation, but both appear to be the same individual.   Dkt. No. 15, Ex. 2.   Ms. Wong's other entity, Virginia E-Commerce Solutions, LLC ("VECS"), is also a Virginia corporation owned and operated by Ms. Wong from her Virginia home.   Unlike VIS, however, VECS is listed as an active business entity operating out of the same Alexandria office as VIS when it existed. Ou Decl., Ex. 1 (VECS business filing).   Ms. Wong is the registered agent of VECS and her registered office has the same address.   *Id.*

HTC is unaware of any evidence that VIS or Ms. Wong had any connections with this District prior to her formation of Innovation and alleged relocation to Plano.   In fact, VIS has previously argued the convenience of E.D. Va. in opposing a motion to transfer. See *Va.*

---

[2] Additional evidentiary support for the same factual background has been provided to the Court in other pending motions to transfer.  *See, e.g., Virginia Innovation Sciences, Inc. v. Amazon, Inc.*, Case No. 4:18-cv-00474-ALM, Dkt. No. 9 at 1-2 (Opposed Motion to Change Venue to the Eastern District of Virginia); Affidavit of Jeffrey Ware ("Ware Decl.") and supporting exhibits.

4

*Innovation Scis*, 928 F. Supp. 2d at 869-70; Ou Decl., Ex. 2 (VIS Opp. to Samsung Transfer Motion).  In response to a motion to transfer out of E.D. Va. filed by Samsung in prior litigation, VIS argued that E.D. Va. "[bore] a significant connection" to the case because VIS had been there since 2005 and had developed the purported inventions there.  (*Id.* at 5).  The court accepted VIS's arguments and denied the motion.  *Va. Innovation Scis.*, 928 F. Supp. 2d at 873.  Presumably, the same "significant connection" exists for the purported inventions in this case considering VIS only recently relocated to Texas.  Moreover, Plaintiff has offered no evidence that VECS, Ms. Wong's other entity, is not still active having a principal office in E.D. Va.

B.      **<u>VIS has already sued HTC in E.D. Va. on related patents and technology and Judge O'Grady is best positioned to consider VIS's latest claims</u>**

VIS filed its first complaint against HTC and its U.S. subsidiary, HTC America, Inc. ("HTCA") in February 2016, later amended in May 2016 with additional patents and claims.  Ou Decl., Ex. 3 (VIS-1 Am. Complaint).  VIS asserted eight patents: U.S. Patent Nos. 7,899,492, 8,050,711, 8,903,451, 8,948,814, 9,118,794, 8,712,471, 9,286,853, and 9,355,611 (collectively, "the '492 Patent Family") and approximately two hundred claims.  In its Complaint, VIS confirmed that all of its patents were directed to the same abstract idea of converting data from one display format to another.  For every asserted claim, VIS alleged infringement in the same way: by "receiving video signals for a mobile terminal and converting those signals to accommodate reproduction by an alternative display terminal."  *Id.* (VIS-1 Am. Complaint) at ¶¶25, 38, 51, 64, 78, 91, 92, 105, 118, 119.  HTC filed a motion to dismiss the asserted claims as unpatentable under 35 U.S.C. § 101 (as did Amazon on the same patents), which Judge O'Grady granted in January 2017 after two separate hearings and two full rounds of briefing (one in each case).  *Va. Innovation Scis., Inc. v. Amazon.com, Inc.*, 227 F. Supp. 3d 582, 586, 604-605 (E.D. Va. 2017).  Judge O'Grady provided a detailed 32 page opinion where he summarized:

"VIS owns the rights to a family of patents that cover a method, system, and apparatus for transferring video signals from a network to a mobile device and then converting those signals in a manner that allows them to be reproduced on an 'alternative display terminal' (*e.g.,* a television)… the Court finds that VIS's patents are not directed to patent-eligible subject matter under 35 U.S.C. §101…"

Ou Decl., Ex.4 (§ 101 Memorandum Opinion) at 1.

In August 2017, VIS filed a second lawsuit against HTC and HTCA in E.D. Va, alleging infringement of two more patents: U.S. Patent No. 8,135,398 and 9,729,918.  The same '918 Patent is asserted in this case.  After HTC raised Rule 11 concerns with VIS's counsel for its decision to file a second suit against HTC and HTCA in E.D. Va. considering the Supreme Court's recent decision in *TC Heartland LLC v. Kraft Foods Grp. Brands LLC,* 137 S. Ct. 1514 (2017) ("*TC Heartland*") and Judge O'Grady's finding of invalidity under § 101 of related patents of similar claim scope, VIS voluntarily dismissed.  Ou, Decl. Ex. 5 (VIS-2 Complaint); Ex. 6 (October 3, 2017 Letter to VIS).  Importantly, in the Complaint, VIS characterized the alleged infringement of the '918 Patent *identically* as how it did in the prior case: by "receiving video signals for a mobile terminal and converting those signals to accommodate reproduction by an alternative display terminal."  *See, e.g.,* Ou, Decl., Ex. 5 (VIS-2 Complaint), ¶¶ 33, 34.

Though VIS did not carry over the identical language and infringement characterizations of earlier filings, the allegations remain the same.  For example, ¶ 71 alleges that:

71.  In particular, claim 1 of the '918 patent recites a mobile terminal configured to receive a compressed multimedia signal appropriate for displaying a multimedia content, a decoder to decompress the digital signal, an encoder to encode the decompressed signal to an encoded signal comprising a decompressed high-definition video signal, and wherein the mobile terminal is configured to transmit the encoded signal to a destination device through a predetermined channel (i.e., a high definitional digital output interface) in conjunction with a navigational command.

Like the asserted claims from the '492 patent family, VIS continues to allege infringement based on HTC devices receiving a signal, converting the signal (*e.g.,* with an

Case 4:18-cv-00476-ALM   Document 22   Filed 12/27/18   Page 11 of 22 PageID #:  346

encoder/decoder) for transmission to another display (*e.g.,* the "destination device"). The allegations for other claims are nearly identical. Dkt. No. 1, ¶¶ 72 (claim 9) and 73 (claim 99). VIS will likely point to different elements from the '492 family such as a "predetermined channel" but VIS cannot credibly dispute that these claims are directed to the same abstract idea as the '492 patent family. *Va. Innovation Scis., Inc.,* 227 F. Supp. 3d at 605 ("The concept of converting a mobile video signal to an HDTV is an abstract concept, and neither the patents' individual claims not their ordered combination can save it from that conclusion.").

Nor can VIS dispute that its infringement allegations for the '918 patent are directed to the same accused functionality as in previous E.D. Va. cases. *See, e.g.,* Complaint, Dkt. No. 1, ¶ 76 ("The Accused Instrumentalities convert the received digital video signal for production on a digital television."). For instance, ¶ 77 alleges that "the Accused Instrumentalities can be mirrored to a digital television by the use of USB-C to HDMI adapter, wirelessly through Chromecast, or via screen mirroring using Miracast. On information and belief, each of these methods of mirroring screen content to a digital television involves encoding the decompressed digital video signal to a format suitable for reproduction on the television."

Judge O'Grady already analyzed in detail claims allegedly directed to this technology and also found them patent ineligible:

> In this respect, VIS's citation to Claims 28-33 of the '814 patent does not save its argument. These claims describe the "high definition multimedia interface, maximum throughput rate, power provision, decoder, [and] encoder," which, VIS argues, all help narrow the scope of the invention. Opp'n at 19. As with the claim language from the '492 patent, however, these claims are cast in purely functional terms. The decoder is "configured to perform said decompressing," the encoder is "configured to perform said encoding," the high-definition multimedia interface (HDMI) is "configured to transmit the encoded digital signal," and the maximum throughput rate simply describes the HDMI signal. '814 Patent. Thus, rather than instructing how to achieve the claimed result, the '814 patent simply recites an abstract idea, then lists a series of components and says "configure them." *See Alice,* 134 S.Ct. at 2357.

The overlap in infringement allegations does not just apply to the '918 patent.   VIS makes the identical infringement allegations with respect to the '798 Patent.   *See, e.g.,* Complaint, Dkt. No. 1, ¶ 49 (identical descriptions of functionality); ¶ 50 (identical allegations against USB-C to HDMI adapter, Chromecast and Miracast).

Plaintiff will likely point out that it also alleges infringement based on HTC devices connecting to Amazon's Alexa platform.   However, the relevant inquiry is not whether there is complete overlap in accused functionality, but rather whether Judge O'Grady's experience analyzing VIS's patent portfolio and the accused HTC and Amazon technologies weigh strongly in favor of transfer to E.D. Va. to preserve judicial economy.[3]   As discussed below, it does.

C.       **HTC has no presence in the Eastern District of Texas**

VIS's venue allegations are that "[v]enue is proper in this judicial district pursuant to 28 U.S.C. § 1400(b)" and that "HTC is a foreign corporation and may be sued in this judicial district." Dkt. No. 1 at ¶ 6. Notably, VIS does not allege that HTC is incorporated in Texas—the Complaint acknowledges that HTC is foreign company organized and based in Taiwan—or that HTC has a regular and established place of business in this district as required under § 1400(b). HTC has no offices or employees in the Eastern District of Texas.

III.    **ARGUMENT**

Under 28 U.S.C. § 1404(a), a court may transfer a civil action to another judicial district for the "convenience of parties and witnesses" and "in the interest of justice."   The threshold inquiry is "'whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed.'"   *Auto. Body Parts Ass'n v. Ford Glob. Techs., LLC*, No.

---

[3] HTC notes that briefing in the other motions to transfer have identified other similarities between the asserted claims and those previously considered by Judge O'Grady.   *See, e.g., Virginia Innovation Sciences, Inc. v. Amazon, Inc.*, Case No. 4:18-cv-00474-ALM, Dkt. No. 28 (Reply to Response to Response to Motion to Change Venue), Gregorian Declaration.

4:13-cv-705, 2015 WL 123852, at *1 (E.D. Tex. Jan. 7, 2015) (internal citation omitted).  Once

that threshold is met, convenience turns on several public and private interest factors.  *Id.* at *3-4.

"[T]he Fifth Circuit forbids treating the plaintiff's choice of venue as a factor in the

analysis of a request to transfer for the convenience of the parties."  *In re Nintendo Co.*, 589 F.3d

1194, 1200 (Fed. Cir. 2009).   "The 'consideration of the interest of justice, which includes

judicial economy, may be determinative to a particular transfer motion, even if the convenience

of the parties and witnesses might call for a different result.'"  *Lifestyle Sols., Inc. v. Abbyson*

*Living LLC*, No. 2:16-cv-01290-JRG-RSP, 2017 WL 5257006, at *4 (E.D. Tex. Nov. 10, 2017)

(*quoting Regents of the Univ. of Cal. v. Eli Lilly & Co.,* 119 F.3d 1559, 1565 (Fed. Cir. 1997)).

A. <u>**Plaintiff could have filed this case in the Eastern District of Virginia**</u>

VIS filed its previous two patent suits against both HTC and HTCA in E.D. Va.  This

second lawsuit, filed after the Supreme Court's *TC Heartland* decision, was dismissed after HTC

raised concerns with VIS regarding its Rule 11 basis for filing when HTCA is incorporated and

has its principal place of business in the Western District of Washington.  Ou Decl, Ex. 6.

Presumably with *TC Heartland* in mind, VIS dismissed and elected to only sue HTC (the foreign

parent) in E.D. Tex., arguing that a foreign corporation may be sued for patent infringement in

any district.  Under that assumption, VIS could have also brought this case in E.D. Va.

B. <u>**Plaintiff's post-Complaint activities that create connections to Texas are**</u>
<u>**irrelevant and consideration would be contrary to Federal Circuit precedent**</u>

"Where a plaintiff's 'presence in Texas appears to be recent, ephemeral, and an artifact of

litigation,' courts should not be misled."  *Seven Networks, LLC v. Google LLC*, No. 2:17-

V00441-JRG, 2018 WL 4026760, at *6 (E.D. Tex. Aug. 15, 2018) (internal citation omitted).

Given the factual record, HTC respectfully submits that any claim by Plaintiff that its

"relocation"  after filing suit (and only after defendants provided notice of their intent to move to

transfer) was completely agnostic of any litigation considerations is, at a minimum, highly suspicious and strains credibility.

Regardless of motive, this Court recognizes the Federal Circuit's instruction that "motions to transfer venue are to be decided based on 'the situation which existed when suit was instituted.'" *Adaptix, Inc. v. HTC Corp.*, 937 F. Supp. 2d 867, 876-77 (E.D. Tex. 2013) (quoting *In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013)) (emphasis added).   There is no dispute that at the time of the Complaint (July 5, 2018), Innovation did not exist, VIS was still a Virginia corporation that owned the patents-in-suit, and Plaintiff had no connections to the Eastern District of Texas.   Rather, VIS, its records, and its sole employee, Ms. Wong, were all located five miles from the federal courthouse in Alexandria.   Plaintiff has not disputed these facts, and its contention that it is now a Texas company operating out of Ms. Wong's apartment in Plano, even if true, is irrelevant to the transfer analysis.

But even if the Court considers these recent developments, the Federal Circuit and this District have consistently rejected ephemeral attempts to shift the convenience analysis in favor of the transferor forum by, *e.g.,* corporate formation or relocation of offices or documents.   For example, in *In re Hoffmann-La Roche Inc.,* a plaintiff "converted into electronic format 75,000 pages of documents demonstrating conception and reduction to practice and transferred them to the offices of its litigation counsel in Texas."   587 F.3d 1333, 1337 (Fed. Cir. 2009).   The Federal Circuit there found characterizations of those documents as "Texas" documents to be a "fiction which appears to have been created to manipulate the propriety of venue."   Regardless of the timing, a "plaintiff's attempts to manipulate venue in anticipation of litigation or a motion to transfer falls squarely within . . . prohibited activities" and must not be credited under 28 U.S.C. § 1404(a).   *Id.* (citing *Van Dusen v. Barrack*, 376 U.S. 612, 625 (1964)).

Similarly, in *In re Microsoft Corp.*, plaintiff incorporated in Texas sixteen days before filing suit and claimed its principal place of business in this District.  630 F.3d 1361, 1364-65 (Fed. Cir. 2011).   Plaintiff Allvoice argued that its incorporation and relocation was distinguishable from *Hoffmann-La Roche*.  *Id*. at 1364.  The Federal Circuit, however, explained that it had recently rejected the idea that relocation in anticipation of litigation creates persuasive convenience of venue.  *Id*.  (citing *In re Zimmer Holdings, Inc*., 609 F.3d 1378 (Fed. Cir. 2010)).  Like *In re Zimmer*, the relocated offices "staffed no employees, were recent, ephemeral, and a construct for litigation and appeared to exist for no other purpose than to manipulate venue."  *Id*. at 1365.  The Federal Circuit added that "[t]he only added wrinkle is that Allvoice took the extra step of incorporating under the laws of Texas sixteen days before filing suit.  But that effort is no more meaningful, and no less in anticipation of litigation, than the others we reject."  *Id*.  This Court reaffirmed this principle in *Adaptix,* 937 F. Supp. 2d at 872, stating that "[a] party's recent relocation to a district in order to manipulate venue should not be considered in the Court's venue analysis."  In *Adaptix*, this Court found the plaintiff not an "ephemeral entity" because it had relocated ***three years prior*** and its "executive vice president continues to live and work in this district."  *Id*. at 873.  Such facts in *Adaptix* are not today's reality—nor, more importantly, the reality when the Complaint was filed.  Plaintiff cannot change the ephemeral nature of its activities and timing related to this litigation.

### C.   **This case belongs in the Eastern District of Virginia**

#### 1.   **The private interest factors favor transfer**

The private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive."  *In re Volkswagen AG,* 371 F.3d 201, 203 (5th Cir. 2004).

a.   **Plaintiff was a Virginia corporation, residing in Virginia at the time the Complaint was filed, and with a residence and business still in Virginia**

Federal Circuit precedent requires a transfer analysis based on the timing of the Complaint.  Plaintiff cannot reasonably dispute that at the time, the relative ease of access to sources of proof strongly favored transfer.  VIS was a Virginia corporation with an office near the Alexandria courthouse since at least 2005 and witnesses residing in the district.  Ms. Wong may currently reside in Plano, but it is notable that she still owns a Virginia residence, an active Virginia business operating out of that residence, and does not own any property in this District. In other words, to the extent her current rental in Plano is relevant (it is not), it would not be unreasonable to expect that Ms. Wong could easily relocate back to Virginia if the cases were transferred.  Regardless, under *EMC Corp.*, this factor weighs heavily in support of transfer.

b.   **Compulsory process will secure key trial testimony in E.D. Va.**

A trial subpoena from the Alexandria Court could secure testimony from relevant third-party witnesses.  VIS's portfolio includes many patents and multiple continuations-in-parts, resulting in separate patent lines for which the parties will likely dispute priority dates.  It may become necessary to secure testimony from persons knowledgeable about the various applications and their connection to related patents in the priority chain.   Two such persons— Messrs. Halal (a named inventor) and Tobin (a prosecuting attorney)—appear to reside near Washington, D.C., which is convenient to and within the subpoena power of the Alexandria Court.  Ou Decl., Ex. 2 (VIS Opp.) at 3.  Their testimony may be necessary in establishing priority dates.  Moreover, as of the time of the Complaint, Ms. Wong's brother, Dr. Tiejun (Ronald) Wang, the other named inventor on the patents-in-suit, would have been under the subpoena power of the Alexandria Court as he allegedly lives with Ms. Wong when in the United States.  Plaintiff may argue that her relocation changes these circumstances, but under

12

*EMC Corp.*, the transfer analysis is to occur under the operative facts at the time the Complaint was filed.  Here again, this factor weighs in favor of transfer and at worst, is neutral.

### c.      E.D. Va. is a more convenient forum for witnesses

As of the filing of the Complaint, no identifiable witnesses were present in this District. On the other hand, Ms. Wong and her brother (when in the U.S.) lived a few miles from the Alexandria Court.  HTC is headquartered in Taipei, Taiwan, and the cost and burden of travel for purposes of this analysis is neutral.  This factor weighs in favor of transfer.

### d.      Practical Considerations: judicial economy would be preserved if the Alexandria Court in E.D. Va. hears this case

"This factor concerns judicial economy, including duplicative suits involving the same or similar issues that may create practical difficulties."  *Lifestyle Sols.*, 2017 WL 5257006, at *4. "[J]udicial economy plays a paramount role in trying to maintain an orderly, effective, administration of justice."  *In re Vistaprint* Ltd., 628 F.3d 1342, 1346 (Fed. Cir. 2010).  Here, judicial economy will be significantly aided by transfer, given Judge O'Grady's substantial familiarity and experience with related patents and overlapping technology (*supra* Section II.B). *See Invitrogen Corp. v. Gen. Elec. Co.*, No. 6:08-CV-112, 2009 WL 331891, at *4–5 (E.D. Tex. Feb. 9, 2009) (transfer is "most appropriate" when one court has extensive familiarity with the technology or the legal issues and has construed the claims).

This Court and others have consistently transferred cases to courts that handled earlier lawsuits with similar patents, technologies, and defendants.  *See, e.g., Kinetic Concepts, Inc. v. Medela AG*, No. 2:07-CV-187, 2008 WL 112120, at *1–2 (E.D. Tex. Jan. 9, 2008) (transferring case to court where the judge "ha[d] substantial experience with these parties, and [] invested time and effort in learning the technology at issue in the case"); *In re Eli Lilly and Co.*, 541 F. App'x 993, 994 (Fed. Cir. 2013) (transfer to court that had "already conducted discovery, claim

13

construction, and ruled on motions for summary judgment involving the same family of patents"). This factor weighs heavily in favor of transfer.

2. **The public interest factors favor transfer**

The public interest factors include "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws." *In re Volkswagen of Am., Inc.,* 545 F.3d 304, 315 (5th Cir. 2008).

a. **Transfer would create no administrative difficulties in E.D. Va.**

This factor considers the time to resolution in the two venues. *See Lifestyle Sols.*, 2017 WL 5257006, at \*5. "Generally, this factor weighs in favor of the venue with the faster time to trial . . . ." *Id.* The median time to trial for civil cases in E.D. Va. is 12.4 months compared to 19.1 months in this district. Ou Decl., Ex. 7 (Time to Trial for E.D. Va. vs. E.D. Tex.). This Court regularly relies on such data to assess court congestion. *See, e.g., Smith v. Real Page, Inc.*, No. 4:18-cv-00025-ALM, 2018 WL 3105758, at \*7 (E.D. Tex. June 25, 2018) (Mazzant, J.).

b. **E.D. Va. has a far greater interest in adjudicating this case than this District**

VIS has previously argued that Virginia has an interest in protecting the intellectual property rights of its residents." *Va. Innovation Scis.*, 928 F. Supp. 2d at 873 ("jurors in Virginia have [an] interest in a case involving technologies developed in Virginia by a Virginia company"). Ms. Wong still owns property in Virginia and was a resident when the Complaint was filed. By contrast, VIS's ties to this District are a rental contract and a Texas business filing that arose months after litigation began. While Texas residents have an interest in Texas companies, this reasoning hardly applies to the current situation. This District has comparatively

14

little interest in an ephemeral litigation entity with (i) one employee/member, (ii) no apparent revenue stream, and (iii) a main office in its principal's alleged rental apartment in Plano.

Moreover, the ease with which VIS merged itself out of existence and relocated from its long-time home in Virginia underscores what little connection Plaintiff's alleged business has to its place of residence.  One employee, and presumably some documents and electronic records, were moved quickly and in the midst of litigation.  With such convenience, Plaintiff could easily pursue litigation from E.D. Va. (or any other venue).  This District should not be burdened with hearing a case that has no genuine relation to its community.  *See Volkswagen I*, 371 F.3d at 206.

The Alexandria Court, on the other hand, has already invested substantial time and effort in VIS's actions.  *See U.S. Ethernet Innovations, LLC v. Acer, Inc*., No. 6:09-cv-448- JDL, 2010 WL 2771842, at *7 (E.D. Tex. July 13, 2010) (public interest factors include prior choice of forum and investment of judicial resources).  This factor also weighs in favor of transfer.

c.    **The remaining factors are neutral**

Both this Court and the Alexandria Court are familiar with laws governing patent cases and are capable of adjudicating the issues.  Moreover, this case presently implicates no conflicts of law.  The final two public interest factors are therefore neutral.

IV.    **<u>CONCLUSION</u>**

For the foregoing reasons, HTC respectfully requests that the Court grant its motion, and order this case transferred to the Alexandria Division of the U.S. District Court for the Eastern District of Virginia, along with a recommendation that it be assigned to Judge Liam O'Grady.

Dated: December 27, 2018

Respectfully submitted,

/s/ Yar R. Chaikovsky

Yar R. Chaikovsky
CA Bar No. 175421
yarchaikovsky@paulhastings.com
Philip Ou
CA Bar No. 259896
philipou@paulhastings.com

1117 S. California Avenue
Palo Alto, California  94304-1106
Telephone:    1(650) 320-1800
Facsimile:    1(650) 320-1900

Harry L. Gillam, Jr.
TX Bar No. 07921800
GILLAM & SMITH LLP
303 S. Washington Ave.
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
gil@gillamsmithlaw.com

Attorneys for Defendant
HTC CORPORATION

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this document was served on all counsel who have consented to electronic service on this 27th day of December, 2018. Local Rule CV-5(a)(3)(A).

/s/ <i>Yar R. Chaikovsky</i>
Yar R. Chaikovsky

## <u>CERTIFICATE OF CONFERENCE</u>

I, the undersigned attorney, hereby certify that on December 19, 2018, counsel for the parties conferred telephonically regarding the present motion and Plaintiff indicated that the motion was opposed.  Counsel subsequently confirmed this position by e-mail on December 27, 2018.  The parties also previously discussed the issue of transfer during a teleconference on November 29, 2018, but at the time agreed that it was in the interest of the parties and in conserving resources to see whether the Court would provide guidance on the issue of transfer during the Rule 16 conference in *Virginia Innovation Sciences, Inc. v. Vector Security Inc.*, Case No. 4:18-cv-00477-ALM that, at the time, was scheduled for Thursday, December 6, 2018, but subsequently rescheduled for January 3, 2019.


/s/ *Yar R. Chaikovsky*
Yar R. Chaikovsky